UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

JUAN GUZMAN LUNA                    *

        Plaintiff                    *

    v.                                       *       Civil Case No. 8:23-cv-01784-AAQ

YUMMY, LLC, et al.                       *

        Defendants                 *

## MEMORANDUM OPINION AND ORDER

This is a case concerning Defendants Yummy, LLC's and Rekik T. Tessema's alleged failure to pay Plaintiff Juan Guzman Luna minimum and overtime wages as required under Maryland and federal law. Pending before the Court is Mr. Guzman Luna's Consent Motion to Approve the Settlement Agreement. ECF No. 35. A hearing is not necessary under this Court's Local Rules. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons discussed below, the Motion shall be granted.

## BACKGROUND

On July 4, 2023, Plaintiff Juan Guzman Luna filed a Complaint in this Court against Yummy, LLC (doing business as Lucy Ethiopian Restaurant), and its owner and member Rekik T. Tessema.[1] ECF No. 1, at 2. Mr. Guzman Luna alleged that he worked as a dishwasher and kitchen laborer at Lucy Ethiopian Restaurant from approximately February 24, 2020, through approximately April 29, 2023. *Id.* at 3. Mr. Guzman Luna also alleged that he typically worked five to six days per week for an average of forty-six hours per week, though there were "multiple"

---

[1] Mr. Guzman Luna also named owner and member Tsega Kebede as a defendant, ECF No. 1, at 2, but voluntarily dismissed his claims against Tsega Kebede on October 10, 2023, ECF No. 11.

1

weeks in which he "worked far more than forty-six hours." *Id.* According to Mr. Guzman Luna, Defendants paid him $12.00 per hour — a rate below the "applicable Maryland and Montgomery County minimum wages," *id.* at 4 — for every hour that he worked, including those in excess of forty in a workweek, s*ee id.* at 3–4. Mr. Guzman Luna claimed that Defendants "knowingly fail[ed]" to pay him the minimum wage and one and one-half times his regular hourly rate for hours worked in excess of forty in any workweek, thereby violating the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a)(1), Maryland Wage and Hour Law, Md. Code Ann., Lab. & Empl. §§ 3-413, -415, -420, and Maryland Wage Payment and Collection Law, *id.* §§ 3-502, -505(a). *See* ECF No. 1, at 6–8. On December 22, 2023, Defendants filed an Answer denying both that they failed to pay Mr. Guzman Luna the minimum wage and that Mr. Guzman Luna was "entitled to any overtime wages." ECF No. 19, at 4.

On April 8, 2024, the parties participated in a settlement conference before the Honorable Gina L. Simms. ECF No. 32. On July 7, 2024, Mr. Guzman Luna, with Defendants' consent, filed the pending Motion, seeking the Court's approval of the agreement the parties had reached in principle during the settlement conference and thereafter formalized and executed. *See* ECF No. 35, at 1–2. The agreement provides that Defendants will pay: (1) $15,200.00 to Mr. Guzman Luna in wages and liquidated damages; (2) $10,258.10 in attorney's fees; and (3) $541.90 in costs, for a total of $26,000.00. *Id.*

## LEGAL STANDARD

"Congress enacted the FLSA to protect workers from the poor wages and long hours that can result from significant inequalities in bargaining power between employers and employees." *Duprey v. Scotts Co.*, 30 F. Supp. 3d 404, 407 (D. Md. 2014). The statute's provisions are, accordingly, "mandatory and, except in two narrow circumstances, . . . generally not subject to

bargaining, waiver, or modification by contract or settlement." *Saman v. LBDP, Inc.*, No. DKC-12-1083, 2013 WL 2949047, at *2 (D. Md. June 13, 2013). The first exception allows the Secretary of Labor to "supervise the payment of back wages to employees[] who waive their rights to seek liquidated damages upon accepting the full amount of the wages owed." *Id.* (citing 29 U.S.C. § 216(c)). The second exception allows a district court to "approve a settlement between an employer and an employee who has brought a private action for unpaid wages pursuant to Section 216(b), provided that the settlement reflects 'a reasonable compromise of disputed issues' rather than 'a mere waiver of statutory rights brought about by an employer's overreaching.'" *Id.* (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)).

The Fourth Circuit has not addressed the standard for "deciding motions for approval of such settlements, [but] district courts in this circuit typically employ the considerations set forth by the Eleventh Circuit in *Lynn's Food Stores*." *Id. Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982), provides that courts should approve FLSA settlements when they reflect "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Id.* at 1355. In making this determination, courts consider: (1) whether there are FLSA issues actually in dispute; (2) whether the settlement agreement is fair and reasonable in light of the relevant factors; and (3) whether the attorney's fees, if included in the agreement, are reasonable. *Saman*, 2013 WL 2949047, at *3.

## ANALYSIS

### I.     Existence of a Bona Fide Dispute

A bona fide dispute exists "if there are FLSA issues that are 'actually in dispute.'" *Id.* (quoting *Lane v. Ko-Me, LLC*, No. 10-2261, 2011 WL 3880427, at *1 (D. Md. Aug. 31, 2011)). To determine whether a bona fide dispute exists between the parties, "courts examine the pleadings

3

in the case, along with the representations and recitals in the proposed settlement agreement." *Duprey*, 30 F. Supp. 3d at 408.  Mr. Guzman Luna claims that a bona fide dispute exists because Defendants disputed that they owed him any unpaid minimum or overtime wages.  ECF No. 35, at 3.  A review of the pleadings confirms that Defendants deny paying Mr. Guzman Luna "anything less than lawful amounts" and that Mr. Guzman Luna was "entitled to any overtime wages."  ECF No. 19, at 4.  Courts in the Fourth Circuit generally agree that a bona fide dispute exists where an employee and employer disagree as to whether the employee was entitled to overtime wages.  *See, e.g.*, *Anthony v. Crestview Wine & Spirits, LLC*, No. CBD-18-3667, 2019 WL 4673403, at *2 (D. Md. Sept. 24, 2019); *Elejalde v. Perdomo Constr. & Mgmt. Serv., LLC*, No. GJH-14-3278, 2016 WL 6304660, at *2 (D. Md. Oct. 27, 2016); *Rossi v. Circle Treatment Ctr., P.C.*, No. 14-3803-GJH, 2015 WL 1815501, at *2 (D. Md. Apr. 17, 2015); *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 1:08cv1310, 2009 WL 3094955, at *16 (E.D. Va. Sept. 28, 2009).  Thus, because the parties disagree as to whether Defendants properly paid Mr. Guzman Luna for all hours he worked, including any overtime wages, a bona fide dispute exists.

## II.     Fairness and Reasonableness of the Settlement Agreement

Since a bona fide dispute exists between the parties, the Court must next determine whether their settlement agreement is fair and reasonable.  In assessing whether a settlement agreement is fair and reasonable, courts consider the following six factors:

> (1) [T]he extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of . . . counsel . . . ; and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery.

*Saman*, 2013 WL 2949047, at *3 (second omission in original) (quoting *Lomascolo*, 2009 WL 3094955, at *10).

First, the parties assert that they exchanged "sufficient discovery" such that counsel for both parties were able to "become familiar with the merits of their respective cases" and "analyze their claims and defenses." ECF No. 35, at 3. Additionally, the parties requested an early settlement conference, ECF No. 22, "which oftentimes is an indication that counsel for each party feels confident that it has sufficient information to make an informed recommendation and for each party to make an intelligent decision," *Wade v. CBH Health, LLC*, No. PX-20-3573, 2021 WL 8269082, at *3 (D. Md. Oct. 15, 2021). Accordingly, the Court is satisfied that there has been a sufficient exchange of information such that this factor weighs in favor of approving the settlement agreement.

Second, the parties state that "this is [a] fact-intensive case in which a trial would be necessary." ECF No. 35, at 3. They add that "further litigation would . . . consume[] the last of Defendants' limited financial resources." *Id.* Parties' desire to avoid the additional time and cost associated with litigation supports a finding that a settlement agreement is fair and reasonable. *See, e.g.*, *Hackett v. ADF Rest. Invs.*, 259 F. Supp. 3d 360, 366 (D. Md. 2016) (finding support for approval of settlement agreement where "informal exchange of information between parties ha[d] allowed them to appropriately ascertain facts and evaluate the strength of their respective positions without incurring the expense that would be created by protracted litigation of what would likely become a complex case"); *Saman*, 2013 WL 2949047, at *4 (finding the parties' representation that the settlement would allow them "to avoid the costs of formal discovery, dispositive motions, and a possible trial" supported approval of the settlement agreement). Therefore, the second factor also weighs in favor of approving the parties' settlement agreement.

Third, there is no evidence that the settlement agreement resulted from fraud or collusion. On the contrary, the parties reached an agreement in principle during a settlement conference before Judge Simms, ECF No. 35, at 1, and claim that "there was no fraud or collusion in reaching the settlement," and that settlement discussions were in fact "very adversarial (though civil)," *id.* at 4. Parties' representations that a settlement agreement was "the product of vigorous representation and negotiations by counsel" provide support for the reasonableness of the agreement. *Saman*, 2013 WL 2949047, at *5. Further, because "[t]here is a presumption that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary," *Lomascolo*, 2009 WL 3094955, at *12, the Court is satisfied that the present settlement agreement is the product of the parties' negotiations and not of fraud or collusion.

Fourth, Mr. Guzman Luna claims that his counsel's experience supports a finding that the settlement agreement is fair and reasonable. *See* ECF No. 35, at 4. Specifically, he asserts that his attorneys have "litigated hundreds of similar matters in Maryland and the District of Columbia." *Id.* Where counsel is experienced in the subject matter of the litigation, "courts presume that clients have been appropriately advised on the merits and challenges associated with settlement." *Fernandez v. Wash. Hosp. Servs., LLC*, No. 8:23-cv-839-AAQ, 2023 WL 4627422, at *3 (D. Md. July 19, 2023). Thus, the Court finds that Mr. Guzman Luna's counsel's experience litigating FLSA matters supports approval of the settlement agreement. *See, e.g.*, *Castro v. Early Learning Language Acads., LLC*, No. CBD-18-2421, 2021 WL 915106, at *4 (D. Md. Mar. 9, 2021) (finding support that settlement agreement was fair and reasonable where counsel had litigated hundreds of wage and hour cases).

Fifth, Mr. Guzman Luna's counsel are of the opinion — with which Defendants' counsel agrees — that the settlement agreement "represents a fair and reasonable compromise of the

disputes between the parties." ECF No. 35, at 4; *see id.* at 2.  Citing their experience, described above, Mr. Guzman Luna's counsel claim that they are "very attuned to the cost-benefit analysis that goes into the decision whether to try a case or settle it," as well as "the care that must be taken in making this decision." *Id.* at 4.  Counsel's opinion that the expense and potential duration of litigation weigh in favor of early settlement lends credence to a proposed settlement agreement. *See Castro*, 2021 WL 915106, at *4.  Accordingly, the parties' counsel's opinion that the settlement agreement is fair and reasonable supports approval of the agreement.

      Sixth, Mr. Guzman Luna's counsel claims that the settlement agreement is fair and reasonable in light of the risks of litigating the case and the amount of the settlement in relation to Mr. Guzman Luna's likely recovery. *See* ECF No. 35, at 4.  Under the terms of the settlement agreement, Mr. Guzman Luna would receive $15,200.00, which exceeds his counsel's estimate of the maximum amount of wages Mr. Guzman Luna would receive were he to prevail at trial. *See id.* at 2–3.  Additionally, this settlement amount constitutes twenty-one percent of Mr. Guzman's claimed backpay and liquidated damages, *see* ECF No. 1, at 8–9, further supporting the fairness and reasonableness of the agreement, *see Gue v. Shree Pashuapati Corp.*, No. DKC-21-44, 2021 WL 2414866, at *2–3 (D. Md. June 14, 2021) (approving settlement in which plaintiff received, in total, twenty percent of claimed backpay, *see* Complaint at 4, *Gue*, No. DKC-21-44, ECF No. 1); *Lee v. Ex-Exec Lube, LLC*, No. DLB-19-3195, 2021 WL 1117274, at *2–3 (D. Md. Mar. 24, 2021) (approving settlement in which plaintiff received, in total, fourteen percent of claimed backpay, *see* Complaint at 7, *Lee*, No. DLB-19-3195, ECF No. 1).  Therefore, the sixth and final factor weighs in favor of approving the settlement agreement.

      Upon consideration of the above factors, the Court finds the settlement agreement to be fair and reasonable.

### III. Reasonableness of Attorney's Fees and Costs

Finally, the Court must "independently assess[]" the reasonableness of the settlement agreement's provision regarding attorney's fees and costs. *Saman*, 2013 WL 2949047, at *3 (quoting *Lane*, 2011 WL 3880427, at *3). Any award of attorney's fees "turn[s] on application of the traditional lodestar methodology factors." *Id.* at *6. Under the lodestar methodology, the court "multiplies 'the number of hours reasonably expended . . . by a reasonable hourly rate' to achieve 'an objective basis on which to make an initial estimate of the value of a lawyer's services.'" *Quevedo v. HBJ, Inc.*, No. PWG-14-734, 2014 WL 3970173, at *5 (D. Md. Aug. 13, 2014) (omission in original) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). "An hourly rate is reasonable if it is 'in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Duprey*, 30 F. Supp. 3d at 412 (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)). Parties seeking judicial approval of an attorney's fee provision in a FLSA settlement agreement "are expected to provide all documentation necessary for the Court to make a lodestar determination as to the hours reasonably expended, including . . . declarations establishing the hours expended by counsel, broken down for each task performed." *Grimes v. Hudson Health Servs. Inc.*, No. MJM-22-2743, 2023 WL 3740554, at *4 (D. Md. May 31, 2023) (quoting *Hackett*, 259 F. Supp. 3d at 368).

Additionally, in determining the reasonableness of the billing rates and hours underlying a lodestar calculation, the Fourth Circuit has directed courts to consider the following factors:

> (1) [T]he time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the

8

> case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Saman*, 2013 WL 2949047, at *6 (quoting *Barber v. Kimbrell's, Inc.*, 557 F.2d 216, 226 n.28 (4th Cir. 1978)).

The parties' settlement agreement provides that Defendants will pay $10,258.10 in attorney's fees to Mr. Guzman Luna's counsel. ECF No. 35, at 4. Mr. Guzman Luna's counsel certify in the Consent Motion that two attorneys, Justin Zelikovitz and Jonathan Tucker, spent approximately 12.9 hours and 9.4 hours, respectively, on this case, for which they each charged a rate of $420.00 per hour. *Id.* at 5. Mr. Zelikovitz and Mr. Tucker have been admitted to the bar for approximately fifteen and a half years and fourteen and a half years, respectively. *Id.* Additionally, Mr. Guzman Luna's counsel certify that paralegals and support staff at their firm expended approximately 9.1 hours on this case, for which they charged $100.00 per hour. *Id.* Mr. Guzman Luna's counsel claim that the rates they charged are "consistent with the guidelines in Appendix B to the [L]ocal [R]ules" and "far, far below the prevailing rates for similar work in Washington, DC," where their firm is located. *Id.*

Although Mr. Guzman Luna's counsel provide limited additional information supporting their request for attorney's fees, the Court finds that their requested award is reasonable.[2] As Mr. Guzman Luna's counsel note, this Court maintains guidelines regarding appropriate hourly rates in Appendix B to its Local Rules. Loc. R. app. B at 127. Appendix B provides that a reasonable hourly rate for lawyers who have been admitted to the bar for nine to fourteen years is $225–350,

---

[2] Mr. Guzman Luna's counsel fail to provide a time log of the tasks they completed, as required by the Local Rules. *See* Loc. R. app. B at 124–25; *Grimes*, 2023 WL 3740554, at *4. Counsel are reminded of the Local Rules' requirements regarding requests for fees and are encouraged to include such documentation in the future to expedite review of motions to approve settlements.

9

a reasonable hourly rate for lawyers who have been admitted to the bar for fifteen to nineteen years is $275–425, and a reasonable hourly rate for paralegals is $95–150.  *Id.*  Accordingly, while Mr. Zelikovitz's rate and the paralegal rate are within the respective ranges suggested in Appendix B, Mr. Tucker's rate exceeds the relevant range, and Mr. Guzman Luna's counsel offer no explanation for this upward departure.  Were the Court to adjust the lodestar to the recommended rate, the attorney's fees would be reduced by approximately $658.  Although the Court "hesitates to completely embrace the hourly rates employed by each time keeper," the upward departure in Mr. Tucker's hourly rate results in a relatively small increase compared to the total fee award and the total settlement amount.  *Hunt v. Constantine Com. Constr., Inc.*, No. 8:20-cv-01846-AAQ, 2023 WL 5003137, at *6 (D. Md. Aug. 4, 2023) (quoting *Leon v. Alvarez*, No. CBD-16-0416, 2017 WL 4236813, at *5 (D. Md. Sept. 25, 2017)).  Additionally, in other FLSA cases that settled at similar stages of the litigation, this Court has found time expenditures greater than that billed by Mr. Guzman Luna's counsel to be reasonable.  *See, e.g.*, *Fernandez*, 2023 WL 4627422, at *5 (finding that thirty-five hours was a reasonable amount of time to spend investigating claims, drafting the complaint, effecting service, reviewing records, assessing damages, negotiating the settlement agreement, and preparing and filing the motion for approval of the settlement agreement).

     Mr. Guzman Luna's counsel also request reimbursement of $541.90 in costs, consisting of $402.00 in filing fees and $139.90 in service costs.  ECF No. 35, at 5.  Filing fees and costs of effecting service are recoverable in FLSA settlement agreements.  *See, e.g.*, *Hunt*, 2023 WL 5003137, at *6 (awarding costs for filing and service).  As such, the requested reimbursement is reasonable.

## CONCLUSION

For the reasons discussed above, the Court hereby grants the parties' Consent Motion to Approve the Settlement Agreement, ECF No. 35, and this case shall be dismissed with prejudice.

Date:  July 26, 2024                                    _____/s/_____
                                                                        Ajmel A. Quereshi
                                                                        U.S. Magistrate Judge